The protests are sustained, and judgment will be entered accordingly.

(C.D. 4381)

MAGID MANUFACTURING COMPANY *v.* UNITED STATES

(Decided October 3, 1972)

*Schwartz & Lidstrom* (*Robert E. Burke* and *Joseph Schwartz* of counsel) for the plaintiff.

*Harlington Wood, Jr.*, Assistant Attorney General (*Steven P. Florsheim*, trial attorney), for the defendant.

*Lamb & Lerch* (*David A. Golden* of counsel) as amicus curiae.

WATSON, Judge: These three protests, consolidated for the purpose of trial, place in issue the tariff classification of certain gloves coated with polyvinyl chloride. The gloves in question were classified as other gloves of rubber or plastics pursuant to item 705.86 of the Tariff Schedules of the United States and assessed with duty at the rate of 35 per centum ad valorem. Plaintiff claims classification as

"seamless" gloves under item 705.84 of said tariff schedules dutiable at the rate of 9 per centum ad valorem prior to January 1, 1969 and 8 per centum thereafter.[1]

The sole issue in this case is whether the imported gloves are "seamless" within the meaning of the tariff schedules. The gloves in question are manufactured by a "dipping" process in which cotton material is cut to fit a hand-shaped metal dipping form, sewn together, turned inside out, placed on the form and dipped into plastic material. The result is a glove with a cotton interior and plastic exterior.

In view of the fact that the interior portions of the gloves possess a palpable seam, plaintiff must argue for a definition of "seamless" which allows the presence of seams. To this end, plaintiff stresses the liquidproof nature of both seamless gloves and the imported gloves seeking in effect to define "seamless" as "liquid proof." The error of this line of reasoning is brought out clearly in defendant's statement of plaintiff's argument in the form of a patently faulty syllogism.

> * * * All seamless rubber and plastic gloves are liquid proof.
> The subject gloves are liquid proof.
> Therefore, the subject gloves are seamless.

In addition, defendant has amassed considerable evidence that the most important characteristic of gloves such as those imported is not their liquidproof quality but their strength, exhibited in resistance to snag, puncture, abrasion and cut and that they are as frequently used in dry industrial applications as in wet applications. Furthermore, two of the imported gloves, represented by exhibits 4 and 6, are not coated on the back of the hand discrediting the liquidproof theory insofar as they are concerned.

In the face of the plain meaning of the term "seamless" and the considerations outlined above, it would take explicit indications of a contrary legislative intent to warrant a definition of "seamless" which covered gloves with seams. No such indications have been manifested. A reference in the Tariff Classification Study[2] to the fact that "* * * seamless gloves, usually made by a dipping process, include types used by surgeons and in the kitchen," does not support any conclusions regarding the permissible presence of seams in such gloves.

In sum, there has been no convincing reason advanced for considering "seamless" as meaning anything other than "devoid of seams" and no reason for considering the interior seam of the imported gloves as anything other than a seam disqualifying them for the claimed classification.

Judgment will be entered accordingly.

---

[1] The court has had the benefit of a brief of amicus curiae filed on behalf of domestic manufacturers of rubber gloves in support of defendant's position.

[2] Fifth Supplemental Report (1963), p. 48.